**SIGNED this 15th day of March, 2011.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| ROBERT E. KIBEL, | 10-51397 |
| *DEBTOR* | CHAPTER 7 |
| VULCAN CONSTRUCTION MATERIALS, LP, | |
| *PLAINTIFF* | |
| V. | ADV. NO. 10-05086 |
| ROBERT E. KIBEL, | |
| *DEFENDANT* | |

### MEMORANDUM DECISION

The defendant / debtor in this case ("Kibel") filed for Chapter 7 on April 12, 2010.  Kibel

Environmental, Inc. ("KEI") filed for Chapter 7 on February 8, 2010.  The plaintiff's ("Vulcan")

complaint asserts causes of action under section 523(a)(2), section 523(a)(4) and sections 727(a)(3) and (a)(5).  The background facts laid out in the complaint are as follows: In May, 2007, KEI submitted a credit application to Vulcan.  Kibel executed a personal guarantee of all credit extended by Vulcan on the basis of KEI's credit application.  Between September 28, 2009 and October 12, 2009, Vulcan furnished materials to Kibel for a construction project Kibel had undertaken with a company newly formed by Kibel (Land Masters of Texas, or "Land Masters"). The materials furnished by Vulcan had a value of at least $40,661.05.  Vulcan was never paid for these materials.  Kibel does not dispute this debt.

Vulcan's first cause of action, brought under section 523(a)(2), alleges the following, in its entirety: "To the extent that the Defendant has (1) represented he paid or failed to pay Vulcan for materials for which he was compensated by the owner or general contractor on the relevant project(s), or (2) delivered the materials in whole or in part to an entity other than the one made the subject of the credit application, the Defendant has violated 11 U.S.C. § 523(a)(2)."

Vulcan's second cause of action, brought under section 523(a)(4), alleges that by using construction trust funds, received from owners or general contractors, to pay his own personal expenses without first paying subcontractors and materialmen, Kibel violated the Texas construction trust fund statute, section 162.031(a) of the Texas Property Code.  Accordingly, argues Vulcan, Kibel's debt to Vulcan should be excepted from discharge under section 523(a)(4) for defalcation while acting in a fiduciary capacity.

Vulcan's third and final cause of action, brought under subsections (a)(3) and (a)(5) of section 727, alleges that because Vulcan believes Kibel "aided or assisted the delivery to or the utilization of material provided by Vulcan to an entity not made the subject of the credit application originally submitted to Vulcan," Vulcan plans to request documentation from Kibel to determine how he used the materials provided by Vulcan, how he paid for them, and the expenses on the project in controversy.  Thus, asserts Vulcan, "[t]o the extent that the Debtor, as an officer, director or agent of any of the relevant entities, has concealed, destroyed or failed to keep or preserve any recorded information from which such business transactions might be ascertained, his discharge should be denied under 11 U.S.C. § 727(a)(3)."  Further, Vulcan

alleges that "[t]o the extent that the Debtor is unable to explain satisfactorily the utilization of funds meant for or obligated to pay for the materials delivered by Vulcan under Texas law, his discharge should be denied under 11 U.S.C. § 727(a)(5)."

Vulcan also seeks pre- and post-judgment interest and attorneys fees.

*Vulcan's Motion for Summary Judgment*

Vulcan filed motion for summary judgment, seeking summary judgment on both of its section 523 claims as well as its section 727(a)(3) claim. Vulcan's summary judgment motion is not the picture of clarity, and does not even bother to lay out the standard for entry of summary judgment. The motion does, however, go into a bit more detail regarding the circumstances of KEI's credit application, Kibel's guarantee (both of which took place in May, 2007), and Vulcan's provision of materials to Kibel under that credit agreement in the Fall of 2009. The relevant facts supporting Vulcan's motion for summary judgment are discussed in conjunction with each claim; the claims are addressed separately below. Despite the shortcomings of Vulcan's motion, Vulcan is entitled to summary judgment on its section 523(a)(4) claim. There remain genuine issues of material fact with respect to the remaining counts in Vulcan's complaint. Accordingly, summary judgment is denied with respect to Vulcan's section 523(a)(2) and section 727 claims.

Summary judgment is appropriate "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. The moving party bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). 'An issue is material if its resolution could affect the outcome of the action.' *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving

party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 304 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002).

If the movant bears the burden of proof on an issue at trial, a successful motion for summary judgment must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). The nonmoving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp.*, 477 U.S. at 324. Here, Vulcan bears the ultimate burden of demonstrating that Kibel's debt is non-dischargeable. *See In re Nicholas*, 956 F.2d 110, 114 (5th Cir. Tex. 1992) ("federal law, although initially requiring the debtor to make a prima facie showing that he is entitled to a discharge, ultimately places the burden on the creditor to prove that the debt falls within the § 523(a)(4) exception.") Thus, Vulcan, as the party moving for summary judgment, bears the burden of proving the absence of any issues of material fact as to Vulcan's claims.

## 1.  Section 523(a)(2)(A)

Vulcan supports its section 523(a)(2) claim with various factual assertions drawn from the depositions of Kibel and his ex-wife that Vulcan attached to its summary judgment motion. Ms. Kibel was the president, CEO and 100% owner of KEI, which was founded in 2003. (C.

Kibel Dep., pp. 32, 37.)  Due to the downturn in the economy, KEI ceased operations in September, 2008 when it ceased having any payroll, surrendered its equipment to its lenders, sold off its assets, and closed its affairs.  (*Id.* at pp. 19-21.)  According to Ms. Kibel KEI's last project ended before September, 2008.  (*Id.*)  Kibel and his wife were separated and living apart from February, 2009 through December, 2009.  (*Id.* at p. 9.)  In September, 2009, Kibel ordered materials from Vulcan under KEI's name and account.  At that time, however, Kibel was actually doing business as, and acquiring materials for, Kibel's newly formed sole proprietorship, Land Masters.  (R. Kibel Dep., pp. 21-22, 31-32, 59-60.)  Kibel sought to acquire materials to be used for a project known as the Dominion Phase I Project (the "Project"), which Kibel undertook to perform for V.K. Knowlton Construction & Utilities, Ltd. ("Knowlton").  The Project began sometime in early July, 2009, and ran for three months.  (*Id.* at pp. 21-22.)  Kibel's contract with Knowlton had a value of $157,438.74.  (*Id.* at p. 24.)  The materials for the Project, furnished by Vulcan in September, 2009, consisted of gravel filter media and manufactured sand filter media.  (*Id.* at p. 35.)  Kibel never considered ordering the materials from Vulcan under his own name or under the name of Land Masters.  (*Id.* at pp. 31-32.)

Vulcan did not know that KEI had ceased doing business when it furnished the materials to Kibel in September, 2009.  (*See* Mot. Summ. J., p. 6.) Additionally, Ms. Kibel was unaware that Kibel was ordering materials from Vulcan under KEI's account.  (C. Kibel Dep., p. 48.)  To the contrary, after Ms. Kibel and Mr. Kibel separated, Ms. Kibel began the process of trying to settle all of KEI's affairs and pay off all of KEI's remaining liabilities.  (*Id.* at pp. 24-25.)  Kibel knew Ms. Kibel intended to pay off all of KEI's debt, and agreed to give up his interest in the couple's home to permit Ms. Kible to settle KEI's affairs from the proceeds of the sale of the home.  (*Id.*)  When Kibel ordered the materials from Vulcan (under KEI's account) Land Masters had very little money and Kibel was already beginning to contemplate bankruptcy.  (R. Kibel Dep., pp. 32-33.)  In sum, Kibel ordered materials from Vulcan under KEI's account at a time when, unbeknownst to Vulcan, KEI was no longer doing business; and he did so when Land Masters had no money and Kibel was contemplating bankruptcy.  Vulcan maintains that these facts support summary judgment in Vulcan's favor under section 523(a)(2)(A).

Section 523(a)(2)(A) states that a debt will not be discharged in bankruptcy if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). "A creditor must prove its claim of nondischargeability by a preponderance of the evidence." *Jacobson v. Ormsby (In re Jacobson)*, 2007 U.S. App. LEXIS 17844, at *5 (5th Cir. July 26, 2007). For a debt to be found nondischargeable under section 523(a)(2)(A), the Fifth Circuit has said that a creditor must show:

> (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance.

*Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005). Additionally, the failure to disclose a material fact when one has a duty to do so is sufficient to establish non-dischargeability for fraud under section 523(a)(2)(A). *In re McMullen*, 2004 Bankr. LEXIS 2558, at *16-17 (Bankr. N.D. Tex. July 15, 2004) ("A 'finding of fraud does not require an affirmative statement … [it] may be predicated on a failure to disclose [a] material fact … [C]ourts have overwhelmingly held that a debtor's silence regarding material fact can constitute a false representation actionable under section 523(a)(2)(A).") (quoting *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997)).

Regarding the intent requirement under § 523(a)(2)(A), the Fifth Circuit has reiterated that "[a] creditor must prove the debtor's intent to deceive in order to obtain a non-dischargeability judgment under [] § 523(a)(2)(A)." *Friendly Fin. Service - Eastgate v. Dorsey (In re Dorsey)*, 505 F.3d 395, 399 (5th Cir. 2007). In other words, actual fraud, as opposed to constructive fraud, is necessary. The Fifth Circuit has further articulated that section 523(a)(2)(A) excepts from discharge "debts obtained by frauds involving 'moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.'" *In re Acosta*, 406 F.3d at 372 (*citing In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992)). The intent to deceive "may be inferred from 'reckless disregard for the truth or falsity of a statement combined

with the sheer magnitude of the resultant misrepresentation.'" *Id.* (*citing In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995), *citing In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994).)  "Nevertheless, an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive... Thus, a 'dumb but honest' defendant does not have scienter." *Id.* (citations omitted).

Regarding the element of reliance, the Fifth Circuit does not require a creditor's reliance to be 'reasonable' under section 523(a)(2)(A).  Instead, § 523(a)(2)(A) "requires justifiable, but not reasonable, reliance...," *In re Jacobson*, 2007 U.S. App. LEXIS 17844, at *5, "but more than reliance in fact." *Moss v. Littleton*, 2002 U.S. Dist. LEXIS 18137, at *8 n. 2 (N.D. Tex. Sept. 26, 2002) (citation omitted).  "Justifiable reliance is a less exacting standard than reasonable reliance.  Reliance on a representation is justifiable if its falsity is not ascertainable upon a cursory examination or investigation." *Jacobson v. Ormsby (In re Jacobson)*, 2007 U.S. Dist. LEXIS 40686, at *35 (W.D. Tex. June 5, 2007) *aff'd by In re Jacobson*, 2007 U.S. App. LEXIS 17844.  Reliance under section 523(a)(2)(A) does not impose a duty to investigate upon a plaintiff unless there is something so amiss in the representation that the plaintiff would be effectively put on notice that something is wrong.  *Moss v. Littleton*, 2002 U.S. Dist. LEXIS 18137, at *8-10.

Regarding the causation element, for a creditor to establish proximate cause, two criteria must be met: 'causation in fact' and 'legal causation.'  *Kleppinger v. Rollins (In re Rollins)*, 2007 Bankr. LEXIS 2837, at *30-31 (Bankr. E.D. La. Aug. 10, 2007).  And, in turn, 'causation in fact' "'requires that a debtor's misrepresentations be a substantial factor in the creditor's decision that ultimately results in the loss.'"  *Id.* (citation omitted).  "Legal causation 'requires that a creditor's loss reasonably be expected to result from the reliance.'"  *Id.* at *32 (citations and legal discussion of legal causation with regard to § 523(a)(2)(A) after the Supreme Court's decisions taking up § 523(a)(2)(4) omitted).  In other words, "[l]egal cause exists only as to 'those pecuniary losses that are within the foreseeable risk of harm that it [the misrepresentation] creates…This means that the matter misrepresented must be considered in the light of its tendency to cause those losses and the likelihood that they will follow.'" *Id.* at *33.

Here, the problematic element involves Kibel's intent to deceive.  First, Kibel's failure to disclose to Vulcan that KEI was no longer in business when Kibel ordered materials from Vulcan under KEI's account was likely an actionable material omission.  *See In re McMullen*, 2004 Bankr. LEXIS 2558, at \*16-17 (noting that a debtor's improper failure to disclose material facts is actionable under section 523(a)(2)(A)).[1]  Second, Vulcan's affidavit submitted in support of its motion for summary judgment reveals that Vulcan believed KEI still existed when Vulcan furnished materials to Kibel.  (*See* Ex. A to Mot. Summ. J.)  This reliance was also justified.  *See Moss v. Littleton*, 2002 U.S. Dist. LEXIS 18137, at \*8-10 (noting that reliance under section 523(a)(2)(A) does not impose a duty to investigate upon a plaintiff unless there is something so amiss in the representation that the plaintiff would be effectively put on notice that something was wrong).  Kibel stated in his deposition that he had ordered materials from Vulcan on KEI's account many times over the course of several years and that he had always paid Vulcan (R. Kibel Dep., p. 32); Vulcan had no reason to investigate the continued existence of KEI.  Vulcan has not, however, met its burden of proving the absence of any genuine issue of material fact regarding Kibel's intent to deceive.  Issues involving a person's intent usually require a trial. This is because,

> [d]eterminations concerning a debtor's state of mind require a subjective assessment of the debtor's intent which often can only be made by the trier-of-fact after it has had the opportunity to assess the credibility and the demeanor of witnesses who testify at trial during both direct and cross examination.

*PNC Bank v. Laskey (In re Laskey)*, 2010 Bankr. LEXIS 3264, at \*6 (Bankr. N.D. Ohio, Sept. 17, 2010).  Summary judgment on issues of intent may be appropriate, however, "where the record of the case leaves no plausible honest explanation for the debtor's action."  *Id.*

Here, the deposition excerpts attached to Vulcan's summary judgment motion show that Kibel had a long relationship with Vulcan through his work at KEI, that Kibel had always been

---

[1] In the context of common law fraud actions, "Texas law imposes a duty to disclose in the following four situations: (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression.  *Nichols v. YJ USA Corp.*, 2009 U.S. Dist. LEXIS 22450, at \*55 (N.D. Tex. Mar. 18, 2009).

able to pay Vulcan up to this point, and that Kibel told Vulcan he would pay for the materials as soon as he had sufficient funds to do so. (R. Kibel Dep. pp. 27-33.) While Kibel did admit that he was contemplating filing for bankruptcy around the time he ordered the materials from Vulcan, he did not actually file until April, 2009.[1] (*Id.* at pp. 32-32.) When asked why he ordered the materials from Vulcan on KEI's account rather than filing a credit application under Land Masters, Kibel replied: "I just knew that this contract came so fast that I wouldn't have had time to do it and I've never not paid Vulcan even while working under Kibel Environment." (*Id.* at p. 32.) These statements tend to show that when Kibel ordered the materials from Vulcan he intended to pay Vulcan; one could reasonably believe that Kibel's failure to disclose that KEI had ceased operations was simply done to expedite receipt of the materials, and not with the intent to deceive or defraud Vulcan. Thus, a material issue of fact remains regarding whether Kibel's conduct evidences "intent to deceive" as interpreted by the Fifth Circuit. *See In re Acosta*, 406 F.3d at 372 (noting that the intent to deceive "may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation'"). As one court has stated,

> when assessing whether a debtor possessed the intent to defraud, if room exists for a court to infer honest intent, the issue of non-dischargeability must be decided in favor of the debtor… Accordingly, even in situations … where strong inferences of fraud exist, a court should not grant a motion for summary judgment on an action brought under § 523(a)(2)(A) when plausible evidence exists which would tend to negate the inference of fraud.

*Id.* at *10. While Kibel's response to the motion for summary judgment did not point to specific facts negating Vulcan's assertions, the evidence presented by Vulcan reveals that Vulcan failed to meet its burden in the first place. Accordingly, summary judgment on this claim is denied. *See Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir.

---

[1] *See Hersh v. United States*, 553 F.3d 743, 755 (5th Cir. 2008) (citing section 523(a)(2) and noting that "when a debtor incurs debt in contemplation of bankruptcy with no intention of repaying his debts or with the intention to otherwise manipulate the bankruptcy system, he may well be committing a fraudulent act that may violate federal law").

2002) ("If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.").[1]

**2. Section 523(a)(4)**

Vulcan maintains that Kibel committed a defalcation while acting in a fiduciary capacity when, after receiving payment from Knowlton, Kibel used the funds to pay his own personal expenses rather than paying Vulcan.  Kibel received payment from Knowlton after submitting Vulcan's delivery slips to Knowlton as verification of receipt of the materials from Vulcan.  (R. Kibel Dep., pp. 46-47.)  By February, 2010, Kibel had been paid in full for his work on the Project.  (*Id.* 50-51.)  Kibel admitted in his deposition that Vulcan was the only materialman or subcontractor that did not receive payment in connection with the Project.  (*Id.* at p. 25.)  He also admitted that he used some of the funds received from Knowlton to pay his own personal expenses, including private school tuition for his step-son, Kibel's truck payments, homes expenses and medical bills.  (*Id.* at p. 29-30.)  Furthermore, Kibel admitted that the trust funds were co-mingled with his own funds in one account. (*Id.* at p. 42.)  Vulcan maintains that Kibel's conduct violated section 162.031(a) of the Texas Property Code, and that, as a result, the court should find Kibel's debt to Vulcan nondischargeable under section 523(a)(4).

Section 162.001 of the Texas Property Code defines what constitute "trust funds" within the meaning of the statute.  That section states:

> (a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

---

[1] While Kibel appears to admit, in his response to Vulcan's complaint, that he violated section 523(a)(2), his response to Vulcan's motion for summary judgment maintains (albeit without pointing to any specific facts) that genuine issues of material fact remain regarding this claim.  Furthermore, the allegations in Vulcan's complaint in support of its section 523(a)(2) claim are confusing to stay the least, and do not actually address the elements of such a claim.  As laid out above, Vulcan's section 523(a)(2) claim states: "To the extent that the Defendant has (1) represented he paid or failed to pay Vulcan for materials for which he was compensated by the owner or general contractor on the relevant project(s), or (2) delivered the materials in whole or in part to an entity other than the one made the subject of the credit application, the Defendant has violated 11 U.S.C. § 523(a)(2)."

Tex. Prop. Code § 162.001. Accordingly, the funds Kibel received from Knowlton constituted trust funds within the meaning of the Texas construction trust fund statute. Section 162.002 further states,

> A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds.

Tex. Prop. Code § 162.002. As the recipient of the funds from Knowlton, Kibel (doing business as Land Masters) was a trustee within the meaning of the statute. Finally, section 162.003, which defined beneficiaries under the statute, states,

> (a) An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

Tex. Prop. Code § 162.003. Vulcan furnished materials to Kibel in connection with construction of the Project. Thus, Vulcan was a beneficiary of the trust funds Kibel received from Knowlton for Kibel's work on the Project.

The next issue concerns how section 523(a)(4) interacts with section 162.031 of the Texas Property Code. Section 162.031 provides:

> (a) A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

> (b) It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53…

Tex. Prop. Code § 162.031. Thus, the question is whether section 162.031 creates a trust for purposes of section 523(a)(4), such that a violation of section 162.031 can provide a basis for

non-dischargeability under section 523(a)(4), which precludes discharge of a debt incurred by fraud or defalcation while acting in a fiduciary capacity.

This issue was first addressed by the Fifth Circuit in *In re Nicholas*, 956 F.2d 110, 113 (5th Cir. 1992).  In *Nicholas*, the Court held that the Texas construction trust fund statute did create fiduciary duties encompassed by section 523(a)(4), but that such duties were defined by the prohibited activity—i.e. using construction trust funds for purposes other than paying the beneficiaries of those funds or expenses "directly related to the construction project." *Id.  See also LVR Carpet Center, Inc. v. Coley (In re Coley)*, 354 B.R. 813, 816 (Bankr. N.D. Tex. 2006) (recognizing *Nicholas* as the accepted view in this circuit).  In *Airtron, Inc. v. Faulkner (In re Faulkner)*, this court summed up the holding in *Nicholas* as follows: "the Texas [trust fund] statute does create a limited trust in favor of the creditor -- if the funds in question were retained, used, or diverted to any use other than 'actual expenses directly related to the construction or repair of the improvement,' then they will be held to have been 'misapplied' in a fashion that is actionable under section 523(a)(4)." 213 B.R. 660, 665 (Bankr. W.D. Tex. 1997). This court further noted that while "state law would create a trust fund at the time any payments are made to a contractor or subcontractor for the construction of specific real property … applicable federal case law would only recognize that fund property for section 523(a)(4) purposes at the time the proceeds are 'misapplied.'" *Id.* at 666 (citing *In re Nicholas*, 956 F.2d at 114). Thus, if Kibel did in fact misapply the trust funds, then a trust arose for purposes of section 523(a)(4) at the time Kibel misapplied the funds.  This then leads to the next issue – whether Vulcan has demonstrated that Kibel "misapplied" the funds with the requisite level of culpability.

While section 162.031 supplies the necessary mental state for a violation of that state statute, federal law governs the mental culpability requirement for purposes of non-dischargeability under section 523(a)(4). *Faulkner*, 213 B.R. at 667 (citing *In re Schwager*, 121 F.3d 177, 184 (5th Cir. 1997)).  Section 523(a)(4), while no longer requiring a showing that the debtor acted with fraudulent intent, does still require that the creditor establish some level of mental culpability on the debtor's part to warrant a finding of  non-dischargeability.  In *In re Coley*, the court addressed "whether a finding that a misapplication occurred under the Texas

Construction Trust Fund Statute satisfied the 'fraud or defalcation' element of section 523(a)(4) of the Bankruptcy Code."  354 B.R. at 819.  That court concluded that, "[t]he applicable case law indicates, at least from this Court's reading, that a finding that the elements of the Texas statute have been satisfied, specifically the misapplication finding, likewise satisfies the elements of section 523(a)(4) - fraud or defalcation while acting in a fiduciary capacity."  *Id.*  Nonetheless, the court in *Coley* went on to examine whether the facts of that case independently satisfied the "defalcation" element of section 523(a)(4).  *Id.*  The court ultimately concluded that, because the facts established that the debtor had misapplied trust funds that she knew or should have known were to be used to pay subcontractors, the defalcation element had been satisfied.  *Id.*

"Defalcation" has been defined as "a 'willful neglect of duty, even if not accompanied by fraud or embezzlement.'"  *Medus v. Perry*, 171 B.R. 961, 967 (E.D. La. 1994) (citing *Matter of Moreno*, 892 F.2d 417, 421 (5th Cir. 1990)); *see also In re Schwager*, 121 F.3d 177, 184 (5th Cir. 1997) (applying the same definition of "defalcation").  And, the Fifth Circuit has

> described the 'willful neglect' of fiduciary duty as 'essentially a recklessness standard.' Thus, willfulness is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known. The objective standard charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive.

*In re Ramirez*, 2008 Bankr. LEXIS 2970, at *8 (Bankr. S.D. Tex. Oct. 28, 2008) (citing *In re Felt*, 255 F.3d 220, 226 (5th Cir. 2001)).  *See also Faulkner*, 213 B.R. at 664 (citing *Schwager*, 121 F.3d at 184) ("No scienter need be established in order to prove a defalcation, at least not in the sense that a plaintiff must show some intent to breach a fiduciary duty. However, the Fifth Circuit has recently held that there must be some level of mental culpability, and that a showing of willful neglect would certainly meet that standard.").  As noted above, courts measure "willfulness" "by reference to what a reasonable person in the debtor's position knew or reasonably should have known."  *Coley*, 354 B.R. at 819 (citing *In re Green*, 352 B.R. 771 (Bankr. W.D. La. 2005)).  Additionally, the bankruptcy court in the Eastern District of Texas has added that "'defalcation' is a broader term than embezzlement or fraud.  It can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain therefrom."  *In*

*re Townsley*, 195 B.R. 54, 63 (Bankr. E.D. Tex. 1996).  Here, charging Kibel with knowledge of the law—Kibel's use of the trust funds to pay personal expenses un-related to the Project in violation of section 162.031 satisfies the mental culpability element of section 523(a)(4).  *See Faulkner*, 213 B.R. at 664 ("In essence, if the fiduciary relationship imposes certain obligations on the debtor, and the debtor fails to perform those obligations, then a defalcation will be made out.") (citing *LSP Investment Partnership v. Bennett (In re Bennett)*, 989 F.2d 779, 790 (5th Cir. 1993)).  Kibel admitted that he used some of the funds received from Knowlton to pay his own personal expenses.  Furthermore, Kibel admitted that the trust funds were co-mingled with his own funds in one account, so Kibel is unable to refute Vulcan's evidence (including Kibel's own admission) that Kibel used the funds to pay expenses un-related to the Project.

In sum, by using the construction trust funds received from Knowlton to pay his own personal expenses while Vulcan, which had furnished materials used by Kibel on the Project, remained unpaid, Kibel violated section 162.031 of the Texas Property Code.  This conduct, in turn, satisfies the mental culpability element of section 523(a)(4).  Lastly, although section 162.031(b) provides an affirmative defense to a violation of section 162.031(a) if the recipient of the trust funds used the funds to pay "actual expenses directly related to the construction or repair of the improvement," Kibel did not raise this defense in his response to Vulcan's motion for summary judgment.  Vulcan has satisfied its summary judgment burden with respect to its section 523(a)(4) claim.

As the plaintiff in this adversary proceeding, Vulcan bears the burden of proof at trial. *See In re Cook*, 2006 U.S. Dist. LEXIS 10508, at *12 (S.D. Tex. Feb. 27, 2006) (noting that the party asserting misapplication of trust funds under section 162.031 bears "the burden of proving that the challenged debt falls within a Section 523(a)(4) exception, and 'must adduce some evidence that funds were misapplied' to prevail in an adversary proceeding") (citing *In re Nicholas*, 956 F.2d at 114)).  Accordingly, to succeed on its motion for summary judgment Vulcan had to present evidence that would entitle Vulcan to judgment at trial.  *See Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003).  Vulcan's evidence shows that Kibel misapplied trust funds with the requisite level of culpability; Kibel did not raise any genuine issue of material fact

to negate Vulcan's assertions. Upon Vulcan's adequate showing, the burden shifted to Kibel to establish a genuine issue of material fact. *See Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. Tex. 2004) (noting that "[i]n response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim"). Kibel has failed to do so. Summary judgment is therefore granted in favor on Vulcan on its section 523(a)(4) claim.

### 3. Section 727(a)(3)

Vulcan has also requested summary judgment on its section 727(a)(3) claim. First, Vulcan asserts that it requested documents relating to KEI pursuant to a subpoena issued to Kibel. Vulcan states that Kibel failed to produce any of the KEI documents requested. (*See* Mot. Summ. J., p. 7.) Vulcan states that Kibel failed to bring any KEI documents to Kibel's deposition, arguing that "they are not part of this lawsuit … and Christina Kibel (is not) part of this lawsuit" (*Id.*) Additionally, asserts Vulcan, Kibel failed to keep track of Land Masters' income on either a fiscal or calendar year basis. (*Id.* at p. 8.) Vulcan notes that "the only documents that [Kibel] brought to his deposition with respect to accounts payable and financial ledgers for Land Master of Texas, was the Broadway Bank checking account and statements related thereto. (R. Kibel Dep., p. 65-67.) Further, Kibel commingled his personal income and expenses with the income and expenses of Land Masters. (*Id.* at p. 42.) Vulcan maintains that Kibel's failure to produce the requested KEI records, combined with the commingling of Kibel's personal and construction business income and expenses in violation of section 162.007 of the Texas Property Code, warrants denying Kibel his discharge pursuant to section 727(a)(3). Kibel responds with the following assertion: "Defendant did not have any ownership in Kibel Environmental, Inc. He was an employee for a part of its existence. He had no right, nor possession of any records of Kibel Environmental, Inc., and could not deliver that which he never had. Kibel Environmental, Inc. was owned by his wife, and they were separated for some time." (Kibel Resp. to Mot. Summ. J., p. 1-2.) Vulcan's summary judgment motion does not mention its section 727(a)(5) claim, so the court assumes that Vulcan is not seeking summary

judgment on that count of its complaint.  For the reasons stated below, Vulcan is not entitled to summary judgment on its section 727(a)(3) claim.

>    Section 727(a)(3) provides that,
>
>    [t]he court shall grant the debtor a discharge, unless … (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).  The policy behind Section 727(a)(3) is to "'force the Debtor to produce dependable records such that the Chapter 7 Trustee, the creditors, and the Court may rely on these records in tracing the Debtor's financial history and condition…', [and] tests the completeness of the Debtor's disclosures…" *Commercial Bank v. Rajabali*, 365 B.R. 702, 712 (Bankr. S.D. Tex. 2007) (citations omitted).  Under this section, Vulcan again bears the burden of proof, and must establish: (1) that the debtor failed to keep or preserve its financial records and (2) that this failure prevented it from ascertaining the debtor's financial condition.  *In re Duncan*, 562 F.3d 688, 697 (5th Cir. 2009).  "Though a debtor's financial records need not contain 'full detail,' 'there should be written evidence' of the debtor's financial condition." *Martin Marietta Materials Southwest, Inc., et. al.  v. Lee, et. al. (In re Lee)*, 309 B.R. 468, 477 (Bankr. W.D. Tex. 2004) (citations omitted); *Rajabali*, 365 B.R. at 712 (agreeing with this standard and stating that "the Fifth Circuit has not stated a particular threshold which satisfies the Debtor's record keeping requirements.").  Notably, though, under Section 727(a)(3), negligence may suffice to deny discharge.  *Rajabali*, 365 B.R. at 712; *DT Credit Corp. v. Brock (In re Brock)*, 2008 Bankr. LEXIS 2974, at *10 (Bankr. E.D. Tex. July 31, 2008) (noting that section 727(a)(3) "requires no showing of knowing or fraudulent intent regarding the destruction of books and records").

If a plaintiff is able to establish a *prima facie* case under Section 727(a)(3), the burden shifts to the debtor to establish that the lack of records is justified under the circumstances.  *In re Lee*, 309 B.R. at 478.  "The debtor's records must at least reasonably allow for reconstruction of the debtor's financial condition to meet the requirements of the Code."  *Id.* (citations omitted).

Factors courts consider in determining whether a debtor was justified in his or her violation of Section 727(a)(3) include "(1) a debtor's education; (2) a debtor's sophistication and business experience; and (3) any special circumstances that may exist." *Rajabali*, 365 B.R. at 713. The trial court has wide discretion in making a decision under this section of the Bankruptcy Code. *Id.* at 712-713; *In re Lee*, 309 B.R. at 478.

Vulcan's motion refers to Kibel's failure to produce documents relating to transactions he carried out on behalf of KEI; the motion also refers to the alleged inadequacy of the records Kibel produced in connection with his own financial affairs. The court will first address Vulcan's motion as it relates to the KEI documents. Kibel was an employee of KEI; he was not an owner (Resp. to Mot. Summ. J., p. 1-2.) Kibel's wife owned KEI, and KEI ceased operations, at her direction, several months before Kibel filed for bankruptcy. (C. Kibel Dep., pp. 19-20, 32.) Kibel's response to Vulcan's section 727(a)(3) argument with respect to the KEI documents is thus well taken. Kibel did not have the right to request KEI's financial documents from KEI, *see* Tex. Bus. Org. Code § 21.218, and thus, did not have the obligation to produce them at Vulcan's request. *See Cadle Co. v. Terrell*, 2001 U.S. Dist. LEXIS 21944, at *15-16 (N.D. Tex. 2001) (stating, in the context of section 727(a)(3), that the debtor had "an obligation to produce any documents requested by [a creditor] that [the debtor] had 'the legal right to obtain…upon demand.'") (quoting *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-30 (Fed. Cir. 1996)). Accordingly, Kibel's failure to produce documents related to KEI's financial affairs cannot justify denying Kibel a discharge under section 727(a)(3).

Regarding the alleged inadequacy of the documents Kibel produced in connection with his own financial affairs, the documents Kibel brought to his deposition consisted of statements from a bank account at Broadway Bank. (R. Kibel Dep., p. 65-67.) These statements reflected the expenses and income of both Kibel and Land Masters. (*Id.* at p. 42.)[1] The production of only bank records from a commingled account that reflects the income and expenses of a debtor as well as the debtor's separate business, will not satisfy the standards of section 727(a)(3); a

---

[1] It appears that Kibel had already provided his tax returns for 2009 prior to the deposition. (*See* R. Kibel Dep., p. 45.)

creditor cannot distinguish between personal and business transactions merely by examining bank statements from a commingled account.  Such a paltry production of information would effectively prevent a creditor from being able to ascertain the debtor's financial condition.  *See PNC Bank, N.A. v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 103 (Bankr. W.D. Pa. 2000) (concluding that while the "practice of commingling business and personal transactions within the same bank account may not necessarily preclude an outsider from understanding the flow of transactions in and out of said account[,]" if the only records kept related to such an account are "checking account statements, cancelled checks, check stubs, and a handwritten register, then such documentation is inadequate for purposes of § 727(a)(3) given that an outsider cannot practically distinguish therefrom between personal and business expenses that are paid out of said account"); *see also Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 858 (Bankr. N.D. Tex. 2003) (noting that submitting cancelled checks, receipts and bank statements will not satisfy the standards of section 727(a)(3) if "a creditor would not be able to ascertain the debtor's true financial condition from such documents without time consuming and detailed analysis").

Here, however, Kibel operated Land Masters as a sole proprietorship.  (R. Kibel Dep., p. 21; Ex. 8 to Mot. Summ. J., Assumed Name Certificate for Land Masters.)  "Land Masters" was merely Kibel's trade name.  Accordingly, Land Masters was not a separate legal entity.  *See Hill v. Oria (In re Juliet Homes, LP)*, 2010 Bankr. LEXIS 4826, at *32-33 n. 9 (Bankr. S.D. Tex. Dec. 16, 2010) (noting that "[a] trade name is not a separate legal entity capable of being sued[,]" and citing *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 635 n.2 (4th Cir. 2002) for the proposition that "[i]t appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity and that the designation d/b/a is merely descriptive of the person or corporation who does business under some other name."); *Matice Enters. v. Gibson*, 2005 Tex. App. LEXIS 6124, at *14 (Tex. App.—Houston [1st Dist.] Aug. 4, 2005) (noting that "adding 'd/b/a' to a name does not constitute the creation of a separate legal capacity; rather, it is a term of identification").  Because Land Masters was not a separate legal entity from Kibel himself, an examination of the bank statements of Kibel/Land Masters might be sufficient to enable Vulcan to ascertain Kibel's financial condition.  Vulcan points out that under section 162.007 of the Texas Property Code contractors are required to maintain separate, detailed

construction accounts.  While this may be true, the failure to maintain an account as required by law is not the test under section 727(a)(3).  Rather, the test is whether the debtor's failure to maintain adequate financial records prevents creditors from being able to ascertain the debtor's financial condition.  *See In re Duncan*, 562 F.3d at 697 (delineating two part test under section 727(a)(3)).

As noted above, courts examine several factors when determining the adequacy of a debtor's record keeping under section 727(a)(3).  *See Rajabali*, 365 B.R. at 713.  Land Masters was a short-lived company; Kibel only performed two jobs under the Land Masters name—one in May, 2009, and the Project at issue in this dispute, which ran through about October, 2010. (R. Kibel Dep., pp. 21-22.)  As noted by the District Court for the Eastern District of Texas,

> [a]n individual debtor 'is not required to keep an immaculate set of books and records of his personal financial transactions.'  The true inquiry for the court is whether the level of record-keeping employed by the debtor[] is appropriate given the nature of [his] particular circumstances.  The bankruptcy court has 'wide discretion in determining whether books or records are adequate under the terms of the statute [section 727(a)(3)] and the facts of each case.'

*Buckeye Ret. Co., LLC v. Laux*, 2008 U.S. Dist. LEXIS 24364, at *27-28 (E.D. Tex. Mar. 27, 2008) (internal citations omitted); *see also Womble*, 289 B.R. at 856 (noting that "[t]he debtor need not maintain books and records such as would pass muster under generally accepted accounting practice[,]" but that the records "must at least allow for reconstruction of the debtor's financial condition").  Courts gauge the adequacy of a debtor's recordkeeping with reference to the debtor's "level of sophistication and the extent of his business activities."  *8400 N.W. Expressway, LLC v. Morgan (In re Morgan)*, 2007 U.S. Dist. LEXIS 86653, at *7 (N.D. Tex. Nov. 19, 2007) (citing *Goff v. Russell Co.*, 495 F.2d 199, 201 (5th Cir. 1974)).  Here, Kibel provided his bank statements from the Broadway Bank account used by Kibel and Land Masters. The statements reflect the source of deposits and the purpose of withdrawals.  The statements do not list the payees of checks written from the account, but Kibel provided copies of the cancelled checks written from the account.  (*See* Ex. 7 to Mot. Summ. J.)  While Kibel is not an "unsophisticated wage earner" such that his failure to keep adequate records should not result in a denial of his discharge, *see Goff*, 495 F.2d at 201, he is also not a sophisticated businessman

with complicated finances.  *See id.*  Courts determine the adequacy of record keeping for purposes of section 727(a)(3) on a case-by-case basis, *Hughes v. Neary*, 386 B.R. 624, 630 (N.D. Tex. 2008), and this is a close call.  Creditors are not "'required to reconstruct a debtor's financial situation by sifting through a morass of checks and bank statements.'"  *Womble*, 289 B.R. at 858 (quoting *Union Planters Bank N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002)). Nonetheless, given the short life span of Land Masters, and the relatively simple nature of the transactions that took place during that period, the court concludes that the bank statements and cancelled checks Kibel furnished to Vulcan are sufficient to enable Vulcan to ascertain the financial condition of Kibel/Land Masters.  *See id.* (noting that "if the debtor's entities transact only a nominal amount of business, and do not have complicated transactions between themselves or with the debtor, the debtor may be justified in maintaining only bank accounts, cancelled checks, and the like") (citing *In re Juzwiak*, 89 F.3d at 428.); *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 697-698 (5th Cir. 2009) (finding that individual debtor's disclosure was adequate for purposes of section 727(a)(3) where he had "provided personal and corporate tax returns, bank statements, formation documents for his most recent entities, his will, life insurance policy, and other documents").

There is an additional reason for declining to grant summary judgment on the objection to discharge.  The failure to produce appears to have arisen in the context of discovery with respect to Vulcan's pursuit of this very claim.  Section 727(a)(3) should not be used as a substitute for more traditional methods for enforcing discovery, such as those available under Rule 37 of the Federal Rules of Civil Procedure.  While there may be a case out there whose facts would warrant the denial of a debtor's discharge for failure to cooperate in discovery, this case is not it.

Summary judgment is denied with respect to Vulcan's section 727(a)(3) claim as Vulcan has not met its initial burden of proving that there is no genuine issue of material fact regarding the inadequacy of the records kept and produced by Kibel.  *See Ayers v. Babb (In re Babb)*, 358 B.R. 343, 354-355 (Bankr. E.D. Tenn. 2006) (when a creditor does not meet initial burden of proof required by § 727(a)(3), burden does not shift to debtor to prove that his records are adequate and debtor should not be denied a discharge).

# # #